**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PAUL MEYERS, | No. CV-08-0078-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| DORA B. SCHRIRO, et al., | |
| Defendants. | |

Pending before the Court is the Motion to Dismiss of Defendants Schriro, Adu-Tutu, and Schroeder. (Dkt. # 24.) For the following reasons, the Court grants the motion in part and denies the motion in part.

## BACKGROUND

Plaintiff is a former prisoner held by the Arizona Department of Corrections ("ADOC"). The instant lawsuit, filed on January 15, 2008, challenges various aspects of Plaintiff's period of incarceration. Plaintiff names twelve defendants: (1) Dora B. Schriro, director of ADOC[1]; (2) James I'Ve, a disciplinary hearing officer; (3) Terresa Ortiz, an assistant warden; (4) Brian Collins, a disciplinary coordinator; (5) Michael Adu-Tutu, a

---

[1] Defendant Schriro has since been replaced as director of ADOC by Charles Ryan. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Ryan is substituted for Ms. Schriro to the extent that she is sued in her official capacity.

1 dentist; (6) Acel Thacker, a facility health administrator; (7) Conchia A. Tee, a health care
2 provider; (8) Toby Underwood, a health care provider; (9) Cheryll McRill, a health care
3 provider; (10) Joseph S. Whaley, a health care provider; (11) Deborah Kinder, a health care
4 provider; and (12) Therese Schroeder, a warden. (Dkt. # 1 at 1-2A.)[2]

Plaintiff's Complaint states five counts under 42 U.S.C. § 1983 (2003), each predicated on Defendants' alleged deprivations of Plaintiff's Eighth and Fourteenth Amendment rights during his imprisonment. Count one alleges a deprivation of Plaintiff's Fourteenth Amendment rights stemming from his placement in segregation in unsanitary or otherwise-improper facilities for six months after an inmate informed on him. (Dkt. # 1 at 3, 3A-3C.) Plaintiff states that he "wrote directly to [Defendant Schroder] and Schroeder took no step to abate the deprivation." (*Id.* at 3C.) Plaintiff further states that he "sent this case before [Defendant Schriro], and she didn't abate any issue raised." (*Id.*) Count two alleges that Defendants Schroeder and Schriro similarly violated Plaintiff's Eighth Amendment rights because "they had knowledge of inhuman conditions and took no step to abate them." (*Id.* at 4, 4A-4D.)

Count three alleges a violation of Plaintiff's Eighth Amendment rights stemming from the provision of poor dental care. (*Id.* at 5, 5A-5C.) Plaintiff states that he informed Defendant Adu-Tutu that he had a dental crown with a gap in it which caused pain and a rotten taste, but that Defendant Adu-Tutu told him "to just brush it better and sent [Plaintiff] away even when [Plaintiff] stated the tooth caused pain." (*Id.* at 5B-5C.) Plaintiff further states that he "submitted [a] grievance to [Defendant Schriro] and gave her the same information[] and responses" he had sent to other officials, but that Schriro simply told him to "continue to work with dental staff to take care of [his] dental needs." (*Id.* at 5B.)

Count four alleges a violation of Plaintiff's Eighth and Fourteenth Amendment rights based on Defendant Tee's decision not to prescribe Plaintiff pain medication for symptoms

---

[2] The parties have employed a number of different spellings of several of these names throughout the course of litigation. The Court adopts the spellings used the most frequently.

- 2 -

he experienced incident to his Hepatitis-C, ostensibly because ADOC "has a two year protocol before [a patient] can receive the needed treatment and due to the cost that if [Defendant Tee] ordered treatments ADOC may not approve [them]." (*Id.* at 6.) Plaintiff further alleges that "[f]or [Defendant] Schriro and her medical staff to have a policy protocol that [does not] allow treatment for two years for a serious medical need is indifferent." (*Id.* at 6A.) Plaintiff also alleged that Defendants Whaley, Kinder, Underwood, Thacker and McRill were indifferent to Plaintiff's suffering and failed to follow their own protocols. (*Id.* at 6B-6G.)

Count five alleges a violation of Plaintiff's Fourteenth Amendment rights stemming from ADOC's failure to award him earned release credits. (*Id.* at 7, 7A-7B.) Plaintiff also states that Defendant Schriro "responded to [his] original grievance on September 25, 2006, and stated that the credits from [his] prior sentence [would] not be applied, and [his] release date [was] as stands." (*Id.* at 7A.)

The Court has since dismissed Defendants I'Ve, Kinder, McRill, Ortiz, Whaley, and Collins. (*See* Dkt. ## 17, 18, 20.) The Court has also dismissed Defendants Thacker and Tee, dismissed the injunctive claims against all defendants, and dismissed Plaintiff's claims for monetary relief against Defendant Underwood in his official capacity. (Dkt. # 22.) Thus, only Defendants Schriro, Adu-Tutu, Schroeder, and Underwood remain as parties to Plaintiff's action.

## DISCUSSION

### I. Legal Standard

To survive a dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216 (3d ed. 2004)). While "a complaint need not

1 contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1974).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the Court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). Although "a complaint need not contain detailed factual allegations," *Clemens*, 534 F.3d at 1022, the Court will not assume that the plaintiff can prove facts different from those alleged in the complaint, *see Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

**II.   Analysis**

Defendants argue that a number of Plaintiff's claims should be dismissed. Each argument will be addressed in turn.

**A.   Injunctive Relief Against all Defendants in Their Individual Capacities**

Defendants argue that Plaintiff cannot seek injunctive relief against Defendants in their individual capacities. (Dkt. # 24 at 2.) The Court has already dismissed this claim (Dkt. # 22), and, in any event, Plaintiff concedes that dismissal is proper on this aspect of his Complaint (Dkt. # 25 at 3).

### B. Monetary Relief Against all Defendants in their Official Capacities

Defendants argue that Plaintiff cannot seek monetary relief against Defendants in their official capacities. (Dkt. # 24 at 2-3.) Plaintiff concedes the point. (Dkt. # 25 at 3.) To the extent Plaintiff makes any such claims, they are dismissed.

### C. All Injunctive Claims

Defendants argue that all of Plaintiff's injunctive claims are moot. (Dkt. # 24 at 3.) The Court has already dismissed all injunctive claims. (Dkt. # 22.) Moreover, although Plaintiff states that he is seeking injunctive relief against Defendants in their official capacities (Dkt. # 25 at 3), Plaintiff does not respond to Defendants' argument in favor of dismissal of those claims as moot. Given that this issue has been briefed several times and that Plaintiff continues to decline to respond to it, and given the Court's need to address other matters and to move the litigation along, dismissal is proper. *See* LRCiv 7.2(c), (i); *Ghazali v. Moran*, 46 F.3d 52, 53-54 (9th Cir. 1995).

### D. State Law Tort Claims

Defendants argue that, pursuant to Arizona Revised Statutes section 31-201.01(F) (2002), any state law tort claims that may arise from this action (such as negligence or false imprisonment) run only against the State of Arizona, which is not a party to this action. (Dkt. # 24 at 3-4.) Plaintiff, as before, does not respond to this argument. Any state law tort claims are therefore dismissed. *See* LRCiv 7.2(c), (i); *Ghazali*, 46 F.3d at 53-54.

### E. 1983 Claim Against Defendant Schriro

Defendants assert that the claims made against Defendant Schriro "are limited to inmate grievances that were allegedly submitted to her." (Dkt. # 24 at 4.) Defendants argue, based on *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), that the mere denial of grievances is insufficient to establish liability under § 1983. (*Id.*) Plaintiff does not dispute that argument, but rather asserts that Defendants "fail[] to mention that [Schriro], as policymaker for the prison, instituted a policy of deciding whether or not a prisoner is to receive care based upon that prisoner's length of incarceration." (Dkt. # 25 at 3.) Thus, Plaintiff's only argument as to why the claim against Defendant Schriro should not be

dismissed appears to be that Schriro instituted a policy of denying prisoners access to medical care as a function of the length of their prison sentences. Defendants' reply disputes that any such factual allegations appear in the Complaint. (Dkt. # 26 at 2.)

However, in count four Plaintiff pled sufficient facts to maintain this part of his § 1983 claim against Defendant Schriro. In that count, Plaintiff states that he was "evaluated by Doctor Conchia A. Tee and diagnosed with chronic Hepatitis-C mandating treatment." (Dkt. # 1 at 6.) However, "Tee did not prescribe any medication for the symptoms or pain." (*Id.*) Then, according to Plaintiff:

> Tee showed me the ADOC protocol for Hep[atitis]-C treatment and stated what I need to do and have done to receive it. Tee stated that ADOC has a two year protocol before I can receive the needed treatment and due to the cost that if she ordered treatments ADOC may not approve it. . . . For Schriro and her medical staff to have a policy protocol that [does not] allow treatment for two years for a serious medical need is indifferent. There's no legitimate reasoning for denial of proper medications for the treatment of Hep[atitis]-C . . . .

(*Id.* at 6-6A.) Construing these allegations in the light most favorable to the nonmoving party, Plaintiff has pled enough facts to make this aspect of his § 1983 claim plausible on its face and to raise a right to relief above a speculative level. Defendants' motion to dismiss is therefore denied as to count four, but granted as to any other claims Plaintiff's Complaint may assert against Defendant Schriro.[3]

### F.    1983 Claim Against Defendant Adu-Tutu

Defendants argue that Plaintiff has not stated sufficient facts to plead that Dr. Adu-Tutu's medical treatment raises a § 1983 claim. (Dkt. # 24 at 5-6.) A prison official violates the Eighth Amendment only if two requirements are met: "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S.

---

[3] Defendants' argument that Schriro lacked a sufficiently culpable state of mind was raised for the first time in Defendants' reply brief, and it is therefore not properly before the Court. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

1  825, 834 (1994) (internal citations and quotations omitted).  Second, "a prison official must
2  have a sufficiently culpable state of mind." *Id.* (internal quotations omitted).  "[A] complaint
3  that a physician has been negligent in diagnosing or treating a medical condition does not
4  state a valid claim of medical mistreatment under the Eighth Amendment."  *Estelle v.*
5  *Gamble*, 429 U.S. 97, 106 (1976).  "In order to state a cognizable claim, a prisoner must
6  allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious
7  medical needs."  *Id.*

8  Here, Plaintiff's claim against Dr. Adu-Tutu is (at most) an allegation that he should
9  have prescribed a different treatment given the gap in Plaintiff's crown.  (Dkt. # 1 at 5B-5C.)
10 The Ninth Circuit has specifically held that, as a matter of law, mere differences of opinion
11 about the best course of medical treatment does not establish a § 1983 violation.  *Franklin*
12 *v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of
13 opinion between a prisoner-patient and prison medical authorities regarding treatment does
14 not give rise to a § 1983 claim.") (citing *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir.
15 1970)); *see also Sanchez v. Vild*, 981 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion
16 does not amount to a deliberate indifference to [a prisoner's] serious medical needs.").  Thus,
17 Plaintiff cannot maintain a § 1983 claim against Defendant Adu-Tutu.

18 **G.  1983 Claim Against Defendant Schroeder**

19 Defendants argue that the Complaint's allegations against Defendant Schroeder are
20 too vague and conclusory to survive a motion to dismiss.  (Dkt. # 24 at 6-7.)  Defendants
21 state that "[t]he only specific allegation regarding Defendant Schroeder is that a member of
22 [ADOC] staff sent Defendant Schriro one of Plaintiff's grievances, which was sent to
23 Defendant Schroeder for a response" and that "Deputy Warden McDonald, not Defendant
24 Schroeder, responded to the grievance."  (Dkt. # 24 at 6-7.)

25 However, Defendants' characterization of the Complaint is not accurate, and Plaintiff
26 does make sufficiently specific allegations about Defendant Schroeder in counts one and two
27 to survive a motion to dismiss.  For instance, Plaintiff states:

28

- 7 -

> I was held longer in segregation, about six months on dilapidated sleeping mats, in [an] 8x10 [foot] cell with four persons living on the floor with leaking sewer water, and sent to 8x10 [foot] rec[reation] cages in snow [and] freezing weather without shoes[] at a minimum security complex. I made this clear to [the] administration, and *I wrote directly to the complex warden, T. Schroeder, the supervisor of [Defendant] Ortiz, and Schroeder took no step to abate the deprivations.*

(Dkt. # 1 at 3C (emphasis added).) Plaintiff further alleges that Defendant Schroeder was "indifferent to [Plaintiff's] health and safety" because she had "knowledge of inhuman conditions and took no step to abate them." (*Id.* at 4.) Plaintiff bases this on his allegation that "Warden Schroeder is directly responsible for the operation of that [prison] complex." (*Id.* at 4D.)

Viewing these facts, and all reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party, the Court cannot say that Plaintiff has failed to plead a § 1983 claim against Defendant Schroeder. Defendants do not argue, nor does the Court find, that such an allegation, if true, is not "objectively, sufficiently serious" to "result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Likewise, Defendants do not argue, nor does the Court find, that such an allegation fails to raise the inference that Defendant Schroeder had a "sufficiently culpable state of mind" to survive a motion to dismiss. *Id.* As the Supreme Court has stated:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. The Complaint here suggests that Defendant Schroeder knew of and disregarded at least two excessive risks to Plaintiff's health – his confinement in an unsanitary cell and his placement in a freezing recreation cage without proper clothing. Dismissal is therefore not warranted under Defendants' motion.

**H.     Count V of Plaintiff's Complaint**

- 8 -

Defendants argue that count five of Plaintiff's Complaint does not state a viable claim because Plaintiff had no protected liberty interest in earned release credits. (Dkt. # 24 at 7-9.)[4] The Due Process Clause does not inherently grant a state prisoner a protected liberty interest in earned release credits; a protected liberty interest in earned release credits is present only when it is granted by the applicable state law. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). In Arizona, a prisoner is entitled to such credits only if the earned release credit statute granted him that right at the time he committed the crime for which he was convicted. *True v. Stewart*, 199 Ariz. 396, 399, 18 P.3d 707, 710 (2001) (holding that prisoners who committed crimes before a relevant change to the earned release credit statute "remain in the position they occupied prior to passage of the [relevant] legislation"); *Crumrine v. Stewart*, 200 Ariz. 186, 187-88, 24 P.3d 1281, 1282-83 (Ct. App. 2001) ("Crumrine's entitlement to application of earned release credits, therefore, is determined by the version of [Arizona Revised Statutes] § 41-1604.07 in effect at the time of his offense.").

Here, Plaintiff alleges that he committed the crime underlying his conviction "prior to December 31, 1993." (Dkt. # 1 at 7.) At that time, the relevant statute granted discretion to the director of ADOC as to whether to actually apply earned release credits; application of those credits did not become mandatory until 1994. *See* 1993 Ariz. Sess. Laws ch. 255, § 87 (effective Jan. 1, 1994) (deleting "[t]he director . . . *may* authorize the release of any prisoner who has [sufficient] earned release credits" and replacing it with "[a] prisoner who has reached his earned release date *shall* be released") (emphases added); *White v. Schriro*, No. CV05-3212, 2007 WL 2410335, at *1 (D. Ariz. Aug. 21, 2007) (finding no liberty interest in the application of earned release credits because the "petitioner began serving a ten year sentence for offenses committed between approximately July, 1992, and April, 1993" and "[t]he statutes in effect at the time of his offenses conferred wide discretion upon the director of [ADOC] in determining whether credits should actually be applied") (citing

---

[4] Defendants make a number of other challenges to count five, none of which Plaintiff addresses. Thus, those arguments are deemed admitted and form an independent basis for dismissal. *See* LRCiv 7.2(c), (i); *Ghazali*, 46 F.3d at 53-54.

Ariz. Rev. Stat. § 41-1604.07(D) (1993)).  Thus, Plaintiff does not have a protected liberty interest in his earned release credits.  *Crumrine*, 200 Ariz. at 187-88, 24 P.3d at 1282-83; *White*, 2007 WL 2410335, at *1.  Count five will therefore be dismissed.

## CONCLUSION

All injunctive claims, including any claim for an injunction against Defendants in their individual capacities, have been dismissed.  All monetary claims against Defendants in their official capacities are likewise dismissed.  Additionally, any state law tort claims are dismissed.  All claims against Defendant Adu-Tutu are dismissed, but the claims discussed above relative to Defendants Schriro and Schroeder are not dismissed.  Finally, count five of Plaintiff's Complaint is dismissed.

Only the following claims remain in this suit: count one and count two against Defendant Schroeder, count four against Defendant Schriro, and count four against Defendant Underwood.  The only relief claimed against these defendants is for monetary damages in their individual capacities.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss of Defendants Schriro, Adu-Tutu, and Schroeder (Dkt. # 24) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant Adu-Tutu is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that count five of the Complaint is **DISMISSED**.

DATED this 19th day of March, 2009.

_____
G. Murray Snow
United States District Judge