**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Meyers, | No. CV08-0078-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Dora B. Schriro, et al., | |
| Defendant. | |

Plaintiff Paul Meyers brought this action under 42 U.S.C. §1983 against various Arizona Department of Corrections ("ADC") officials. Pending before the Court is Defendant's Motion for Summary Judgment. (Dkt #47.) For the reasons set forth below, the Court grants the Motion.

**I. BACKGROUND**

Meyers was incarcerated with the ADC from October 4, 2004 to December 6, 2007 (Dkt. #48 at ¶ 1.) ADC records reflect that Meyers arrived at the Arizona State Prison Complex ("ASPC")-Safford on or about November 28, 2005 and was transferred to the Miles Detention Unit on or about November 17, 2006 after being found guilty of a disciplinary infraction. (Dkt. #48 at ¶¶ 3, 55.)

Defendant Dora Schriro was the ADC Acting Director from July 1, 2003, until May 26, 2004. (Dkt. #48 at ¶ 4.) Schriro's office received several inmate grievance appeals from Meyers. Former ADC Deputy Director Dona Marie Markely responded to these grievances

on Defendant Schriro's behalf. (Dkt. #48 at ¶¶ 72-73, 78.) Defendant Therese Schroeder is employed by the ADC as a Warden at the ASPC-Perryville. (Dkt. #48 at ¶ 7.) She was previously the Warden at ASPC-Safford from April 1, 2006 to February 16, 2008. *Id*. While there, Schroeder was responsible for the safe, secure, and orderly operation, administration, and management of the Safford prison complex, which includes several prison units— Graham Unit, Fort Grant Unit, Tonto Unit and Miles Detention Unit. (Dkt. #48 at ¶ 8.) The day-to-day responsibility of managing the administrative functions and overseeing the operational and security aspects of the units that comprise the ASPC-Safford is delegated to the deputy warden of each unit. (Dkt. #48 at ¶ 9.)

Defendant Toby Underwood is employed by the ADC as a physician assistant. (Dkt. #48 at ¶ 10.) On November 29, 2005, Underwood assessed Plaintiff with chronic hepatitis C. (Dkt. #48 at ¶ 31.) Hepatitis C is a viral infection which is transmitted through exposure to blood or to fluids contaminated with blood. (Dkt. #48 at ¶ 11.) More than 80% of infected individuals never advance from having chronic hepatitis C to any cirrhosis (scarring of the liver). (Dkt. #48 at ¶ 14.)

ADC's hepatitis C treatment protocol is based on recommendations from the Center for Disease Control's guidelines for hepatitis C treatment. (Dkt. #48 at ¶ 27.) Pursuant to treatment protocol, patients with an ALT[1] level above 41 are considered candidates for hepatitis C treatment. (Dkt. #48 at ¶ 24.) Hepatitis C treatment, however, is only provided to inmates based on whether the treatment is medically necessary. (Dkt. #48, Ex. E.) Although an inmate will be *considered* for treatment, the recommendation to proceed with the evaluation process is based on the signs and symptoms exhibited by the inmate and by the biochemical markers of significant liver disease. (Dkt. #48 at ¶ 24.) The Hepatitis C Committee at the ADC Central Office, not the individual providers, directs the overall work up and selection for treatment based on the established criteria for hepatitis C. (Dkt. #48 at

---

[1]This ALT (Alanine transaminase) test measures the amount of ALT in the blood. The test is performed to determine if the liver is damaged or diseased.

¶ 25.)

Underwood saw Meyers on November 29, 2005, for Meyers's complaint of chronic right hip pain. (Dkt. #48 at ¶ 31.) Underwood noted that Meyers's past medical history included hepatitis C and also noted that Meyer's ALT was 58 in May 2005. *Id.* About three months later, on March 6, 2006, Dr. Richard Rowe[2] ordered a hepatitis C recombinant immunoblot assay (RIBA) (confirmation test for the hepatitis C antibody) to confirm hepatitis C positivity. (Dkt. #48 at ¶ 32.)

On March 14, 2006, Underwood noted in Plaintiff's medical records that his RIBA was positive and that his ALT was 89. (Dkt. #48 at ¶ 32.) On April 4, 2006, Underwood saw Plaintiff because he was complaining of chronic fatigue and right abdomen pain. His ALT levels were again abnormally high at 89. (Dkt. #48 at ¶ 33.) Defendants assert that when Underwood saw Meyers on April 4, 2006, he wrote a notation questioning the need for a liver biopsy; however, he did not believe that Meyers had any biochemical markers indicating the immediate need for a liver biopsy. (Dkt. #48 at ¶ 33.) Defendants state that Underwood was following ADC's hepatitis protocol, which read that any ADC inmate with an ALT of 41 or above will be considered a candidate for hepatitis C treatment, but that the recommendation to proceed with the evaluation is based on signs and symptoms exhibited by the inmate and biochemical markers of significant liver disease. (Dkt. #48 at ¶ 24.) Underwood argues that he would have referred Meyers for evaluation of treatment if any of these signs were present. (Dkt. #48 at ¶ 37.)

Underwood claims he did not ignore Meyers's complaints of pain. When Meyers complained of discomfort in the right abdomen, Underwood determined that Meyers's abdomen was negative for heptosplenomegaly [ASM - enlargement of the liver and spleen]; and he was anicteric (not yellow). (Dkt. #48 at ¶ 33.) The same ALT tests were conducted on September 12, 2006, and October 3, 2006, showing again a high ALT. Plaintiff was told

---

[2] Dr. Rowe is a licensed physician employed by the ADC. He is the Medical Program Manager for the ADC.

the same tests would be done in another six months. (Dkt. #48 at ¶¶ 34, 35.) Plaintiff was never referred to the Hepatitis C Committee. (Dkt. #48 at ¶ 37.) Based on the undisputed medical opinion of Dr. Rowe, Plaintiff's hepatitis C did not require urgent treatment. (Dkt. #48 at ¶ 14.) Plaintiff alleges, but provides no specific evidence, that treatment would have provided him a significant chance to halt possible future liver damage and to prevent possible future liver transplant and/or other hepatitis C complications. (Dkt. #49 at 4.) In fact, Plaintiff does not provide evidence that he ever developed any serious liver damage as a result of his hepatitis C.

Plaintiff alleges that, because he had only one year left in his prison sentence, Underwood conducted the same tests repeatedly to prevent a referral to the Hepatitis C Committee in accordance with ADC protocol. (Dkt. #49.) Plaintiff filed grievances and letters to medical and ADC staff, but was continually denied referral to the Hepatitis C Committee. (Dkt. #48 at ¶¶ 59–78.) In grievance case number A14-115-007, dated August 28, 2007, Meyers complained he was not being seen for severe side, rib and low back pain, and that he wanted doctors to follow their protocols for hepatitis C. (Dkt. #48 Ex. C-1.) In response, a Facility Health Administrator reviewed Meyers's medical records and stated

> This is in response to your inmate Grievance dated 8/31/07. . . in which you complained about not getting proper treatment. The HCP has provided the following information: You had an appointment and were seen in clinic 08/07/07. Your back exam was normal. X-rays of your hips and hands show minor degenerative arthritic changes, not unusual for someone your age. You have a prescription for ibuprofen to take as needed for arthritis pain. . . Blood test[s] were completed in 02/2006, 09/2006 and 07/2007 which show stable mild elevation of liver enzymes without significant abnormalities. Additional tests for Hepatitis have been ordered. You are receiving appropriate treatment.

(Dkt. #48 Ex. C.)

Meyers was released from the ADC on December 6, 2007. (Dkt. #48 at ¶ 38.) On February 11, 2008, Plaintiff went to Dr. Dean T. Martin for evaluation, consultation, and treatment as indicated for chronic hepatitis C infection. (Dkt. #48 at 39.) Dr. Martin stated

> The patient is interested in treating his condition, but is uncertain whether he will be able to continue with his current insurance. I have advised that if his insurance will likely be stable for 6 months, which will probably be the duration of the treatment, we can arrange and initiate treatment, though with

- 4 -

>
> likely his insurance will be changing in the next few months in lieu of the fact that treating hepatitis C is not emergent, that I would defer until there is a good likelihood that his treatment would not be interrupted. . . .

(Dkt. #48 Ex I.) Dr. Martin also stated in Plaintiff's medical record that "patient [is] in no distress" and that the stage of the hepatitis is uncertain. *Id.* The parties dispute whether Dr. Martin delayed the hepatitis C treatment because the treatment was non-emergent (Dkt. #48 at ¶ 39), or because Meyers lacked insurance. (Dkt. #50 at ¶ 4.)

Plaintiff further alleges that, during his stay at the Miles Detention Unit, Plaintiff was subjected to inhumane conditions. (Dkt. #48 at ¶ 2.) Meyers contends he experienced the following conditions at MDU. He was confined in an eight-by-ten foot cell which housed four people. The mattresses were dilapidated, and contained mites. (Dkt. #1). The toilet leaked sewer water and was not repaired for thirty days. *Id.* He had to eat and sleep next to the toilet and was not allowed to exercise for five months. *Id.* He was not allowed to have shoes or a sweater in freezing temperatures, among other allegations. *Id.*

Director's Order ("DO") 802 sets forth the procedures inmates must follow to complete the prison administrative grievance process for "property, staff, visitation, food services, institutional procedures, Department Written Instructions, program access, medical care, religion and conditions of confinement" issues through the Director's level. (Dkt. #48 at ¶ 59.) In accordance with DO 802, before submitting a formal grievance, an inmate is required to attempt to resolve all allowed grievance issues informally by submitting an inmate letter to his or her assigned Correctional Officer III ("CO III") within ten workdays of the action that caused the complaint. (Dkt. #48 at ¶ 62.) On March 5, 2007, Meyers submitted an inmate letter to Schroeder (Dkt #48 at ¶ 64.) This letter read:

> Informal Attempt to Resolve the Following Problem.
> I have sent (3) inmate letters to CO III Coca, to resolve my detention and classification status per policy 804. Letters dated 2/5/07; 2/17/07; and 3/4/07. Also; grievance dated 2/26/07 that the CO III held!
> The Disciplinary action 06-501-1064; that sent me to M.D.U. was "Dismissed on 2/14/07 by D.W. Broadhead"
> I have to request, to CO III Coca and CO IV Ortiz, why have they not resolved the issue or even responded to my letters as required by D.O. Policy. "Why am I still being subjected to punitive segregation for -4-months when the action was dismissed?" Why am I housed on the floor in unsanitary

conditions, sleeping on dilapidated mats[?]
(1) The facts are I would like to know the reason that the CO III Coca has not responded to any of the above issues or resolved the "classification" issues on 06-501-1064!
(2) The justification for me to still be house[d] in [M]iles [D]etention under inhumane and unlawful conditions.
(3) I would like to ask the Warden[s] Schroeder and Luna if they stand behind these actions and decisions of their subordinates[.]

*Id.* Schroeder responded to Meyers's inmate letter on March 19, 2007, stating that all informal attempts to resolve must be sent to his assigned CO III and that his classification was appropriate. (Dkt. #48 at ¶ 65.) Plaintiff filed grievances and sent letters to correctional officers at the ASPC-Safford, but claims nothing was done to change the conditions. (Dkt. #48 at ¶¶ 64, 67,69.)

The following counts remain against defendants: Count One - Meyers alleges Defendant Schroeder violated his Fourteenth Amendment rights stemming from his placement in segregation in unsanitary or otherwise improper facilities for six months; Count Two - Defendant Schroeder violated Meyers' Eighth Amendment rights because she "had knowledge of inhuman conditions and took no step to abate them"(Dkt. #1); Count Four - Meyers alleges that Defendant Schriro was deliberately indifferent to his serious medical needs, i.e., hepatitis C, by having a policy protocol that does not allow treatment for two years. Meyers also alleges that Defendant Underwood was indifferent to his suffering from hepatitis C and failed to follow ADC protocol. (Dkt #48 at ¶ 2.)

## II. Motion for Summary Judgment

### A. Summary Judgment Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). In addition, the dispute must be

1  genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for
2  the nonmoving party."*Id.*

3  The moving party "bears the initial responsibility of informing the district court of the
4  basis for its motion, and identifying those portions of [the record] which it believes
5  demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477
6  U.S. 317, 322 (1986). However, the moving party need not disprove matters on which the
7  opponent has the burden of proof at trial. *Id*. at 323. Then, the burden is on the nonmoving
8  party to establish a genuine issue of material fact. *Id*. at 322–23. The nonmoving party "may
9  not rest upon the mere allegations or denials of [the party's] pleadings, but. . . must set forth
10  specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e): *see*
11  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

### B. Medical Treatment

13  Prison officials "violate a prisoner's Eighth Amendment rights if they are deliberately
14  indifferent to his [or her] serious medical needs." *Anderson v. County of Kern*, 45 F.3d 1310,
15  1316 (9th Cir. 1995) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). A plaintiff
16  must show (1) a serious medical need and (2) that the defendant's response was deliberately
17  indifferent. *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006). This second prong is
18  satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or medical
19  need and (b) harm caused by the indifference. *Id.* Because the parties do not dispute the first
20  prong, the Court only addresses the second prong.

21  Deliberate indifference "may appear when prison officials deny, delay, or
22  intentionally interfere with medical treatment, or it may be shown by the way in which prison
23  physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.
24  1988) (citing *Estelle*, 429 U.S. at 104–05). The indifference to medical needs, however,
25  "must be substantial; a constitutional violation is not established by negligence or 'an
26  inadvertent failure to provide adequate medical care.'" *Anderson*, 45 F.3d at 1310 (quoting
27  *Estelle*, 429 U.S. at 105–06); *see Toguchi v. Chung,* 391 F.3d 1051, 1060 (9th Cir. 2004)
28  (citing *Hallet v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002)) ("A showing of medical

malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment"); *Hutchinson*, 838 F.2d at 394 ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights"). Furthermore, a delay in providing medical treatment does not constitute an Eighth Amendment violation unless the delay was harmful. *Hunt v. Dental Dep't,* 865 F.2d 198, 200 (9th Cir. 1989)(citing *Shapley v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)). To establish deliberate indifference, a prisoner must show that the delay led to further injury. *See Hallett v. Morgan,* 296 F.3d 732, 746 (9th Cir. 2002).

### 1. Defendant Schriro

In Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. #49), Plaintiff fails to address Defendant Schriro. Schriro's only involvement in this case is Meyers's inmate grievance appeals in case numbers A14-115-007 and D0101707, to which former ADC Deputy Director Dona Marie Markely responded on Schriro's behalf. (Dkt. #48 at ¶¶ 72– 73, 78.) Denial of a grievance, without more, is insufficient to establish liability under §1983. *See Shehee v. Luttrell,* 199 F.3d 295, 200 (6th Cir. 1999) (holding that officials' denial of administrative grievances and failure to prevent retaliation does not state a § 1983 claim). The Court construes Plaintiff's failure to address Schriro as a concession to dismissal.

### 2. Defendant Underwood

Plaintiff claims that he was a clear candidate for hepatitis C treatment, but was ignored and never referred for treatment. However, each time that Underwood saw Meyers, he noted Meyers's history of hepatitis and his ALT values, as well as when the next chemistry panel/complete blood count or lab work was to be done. The recommendation to proceed with the evaluation process is based on the signs and symptoms exhibited by the inmate, and biochemical markers or significant liver disease. If the health care provider ("HCP") determines that the treatment is within medical protocol based upon the inmate's complaints and HCP's medical evaluation, the HCP makes a recommendation to the Hepatitis C Committee, ADC Central Office. Underwood argues that if any signs or

symptoms of significant liver disease were present, Underwood would have referred Meyers for evaluation treatment. Although Meyers's ALT was elevated during the times Underwood examined him, he exhibited neither signs or symptoms of significant liver disease nor any biochemical markers of significant liver disease. (Dkt. #48 at ¶ 37.)

Plaintiff is unable to show that Underwood acted with deliberate indifference. Deliberate indifference is shown by a purposeful act or failure to respond to a prisoner's pain or medical need and harm caused due to the indifference. *Jett,* 439 F.3d at 1096. Underwood routinely responded to Meyers's medical needs by observing his ALT levels and making decisions regarding Meyers's medical treatment based on his medical opinion. At best, Meyers and Underwood had a difference of opinion regarding to treatment, which does not rise to a §1983 claim. *See Franklin,* 662 F.2d at 1344; *See also Sanchez,* 891 F.2d at 242.

While it is undisputed that Meyers's ALT levels were above normal, the basis for recommendation for treatment is based on all of a patient's signs and symptoms, and biochemical markers of liver disease. Meyers's ALT levels established that he met the requirement for *consideration* for treatment; however, this does not guarantee treatment. There are other factors besides ALT levels that weigh into the determination for treatment, and Plaintiff offers no evidence that these factors weighed in favor of treatment. Further, Meyers's own doctor, Dr. Martin, has determined that treating Meyers's hepatitis C is not emergent and that he would defer treatment until Meyers's insurance would be stable. If treatment was not emergent when Meyers was released from prison, it was not emergent while Meyers was in prison. Therefore at most, Underwood caused a delay in treatment for the short period of time that Meyers was in prison. A delay in medical treatment, without more, however, is insufficient to state a claim for deliberate indifference. *Shapely,* 766 F.2d at 407.

Further, Meyers has not provided the Court with evidence of any harm caused to him by Underwood's alleged indifference. Meyers's doctor, Dr. Martin, has stated that Meyers's hepatitis C treatment was "not emergent," and that patient is "in no distress." Further, Meyers has not provided any evidence to the Court that he currently is experiencing any

symptoms of significant liver disease were present, Underwood would have referred Meyers for evaluation treatment. Although Meyers's ALT was elevated during the times Underwood examined him, he exhibited neither signs or symptoms of significant liver disease nor any biochemical markers of significant liver disease. (Dkt. #48 at ¶ 37.)

Plaintiff is unable to show that Underwood acted with deliberate indifference. Deliberate indifference is shown by a purposeful act or failure to respond to a prisoner's pain or medical need and harm caused due to the indifference. *Jett,* 439 F.3d at 1096. Underwood routinely responded to Meyers's medical needs by observing his ALT levels and making decisions regarding Meyers's medical treatment based on his medical opinion. At best, Meyers and Underwood had a difference of opinion regarding to treatment, which does not rise to a §1983 claim. *See Franklin,* 662 F.2d at 1344; *See also Sanchez,* 891 F.2d at 242.

While it is undisputed that Meyers's ALT levels were above normal, the basis for recommendation for treatment is based on all of a patient's signs and symptoms, and biochemical markers of liver disease. Meyers's ALT levels established that he met the requirement for *consideration* for treatment; however, this does not guarantee treatment. There are other factors besides ALT levels that weigh into the determination for treatment, and Plaintiff offers no evidence that these factors weighed in favor of treatment. Further, Meyers's own doctor, Dr. Martin, has determined that treating Meyers's hepatitis C is not emergent and that he would defer treatment until Meyers's insurance would be stable. If treatment was not emergent when Meyers was released from prison, it was not emergent while Meyers was in prison. Therefore at most, Underwood caused a delay in treatment for the short period of time that Meyers was in prison. A delay in medical treatment, without more, however, is insufficient to state a claim for deliberate indifference. *Shapely,* 766 F.2d at 407.

Further, Meyers has not provided the Court with evidence of any harm caused to him by Underwood's alleged indifference. Meyers's doctor, Dr. Martin, has stated that Meyers's hepatitis C treatment was "not emergent," and that patient is "in no distress." Further, Meyers has not provided any evidence to the Court that he currently is experiencing any

symptoms of significant liver disease were present, Underwood would have referred Meyers for evaluation treatment. Although Meyers's ALT was elevated during the times Underwood examined him, he exhibited neither signs or symptoms of significant liver disease nor any biochemical markers of significant liver disease. (Dkt. #48 at ¶ 37.)

Plaintiff is unable to show that Underwood acted with deliberate indifference. Deliberate indifference is shown by a purposeful act or failure to respond to a prisoner's pain or medical need and harm caused due to the indifference. *Jett,* 439 F.3d at 1096. Underwood routinely responded to Meyers's medical needs by observing his ALT levels and making decisions regarding Meyers's medical treatment based on his medical opinion. At best, Meyers and Underwood had a difference of opinion regarding to treatment, which does not rise to a §1983 claim. *See Franklin,* 662 F.2d at 1344; *See also Sanchez,* 891 F.2d at 242.

While it is undisputed that Meyers's ALT levels were above normal, the basis for recommendation for treatment is based on all of a patient's signs and symptoms, and biochemical markers of liver disease. Meyers's ALT levels established that he met the requirement for *consideration* for treatment; however, this does not guarantee treatment. There are other factors besides ALT levels that weigh into the determination for treatment, and Plaintiff offers no evidence that these factors weighed in favor of treatment. Further, Meyers's own doctor, Dr. Martin, has determined that treating Meyers's hepatitis C is not emergent and that he would defer treatment until Meyers's insurance would be stable. If treatment was not emergent when Meyers was released from prison, it was not emergent while Meyers was in prison. Therefore at most, Underwood caused a delay in treatment for the short period of time that Meyers was in prison. A delay in medical treatment, without more, however, is insufficient to state a claim for deliberate indifference. *Shapely,* 766 F.2d at 407.

Further, Meyers has not provided the Court with evidence of any harm caused to him by Underwood's alleged indifference. Meyers's doctor, Dr. Martin, has stated that Meyers's hepatitis C treatment was "not emergent," and that patient is "in no distress." Further, Meyers has not provided any evidence to the Court that he currently is experiencing any

significant liver disease or otherwise has been harmed. Thus, Plaintiff has not provided the Court with any evidence that the course of treatment that Underwood chose was medically unacceptable under the circumstances. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 2006).

### C. Conditions of Confinement

Count One of Meyers's Complaint alleges that Defendant Schroeder violated his Fourteenth Amendment rights stemming from his placement in segregation in unsanitary or otherwise improper facilities for six months. Count Two alleges that Defendant Schroeder similarly violated Plaintiff's Eighth Amendment rights in connection with the same facility and conditions alleged in Count One. "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Crown Point Dev. Inc. v. City of Sun Valley,* 506 F.3d 851, 855 (9th Cir. 2007) (citing *Graham v. Connor,* 490 U.S. 386 (1989)). In this case, the due process violation asserted in Count One based on Meyers's conditions of confinement is covered by a more specific constitutional provision, the Eighth Amendment, and therefore will be analyzed under the Eighth Amendment standard.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer,* 511 U.S. at 832 (internal quotation omitted). Where conditions of confinement are at issue, the Supreme Court has held that a prison official violates the Eighth Amendment only when two requirements are met. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, "a prison official must have a 'sufficiently culpable state of mind.'" *Id*. (quoting *Wilson*, 501 U.S. at 297). "In prison-condition cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id*. (quoting *Wilson*, 501 U.S. at 302-303). The Eighth Amendment requires, at a minimum, provision of "adequate food, clothing, shelter, and medical care and. . . reasonable measures to guarantee the safety of the inmates." *Id*. The prisoner bears the burden of proving that the

prison condition is "extreme" and "pose[s] an unreasonable risk of serious damage to the [prisoner's] future health or safety. *Chandler v. Crosby,* 379 F.3d 1278, 1289 (11th Cir. 2004). To violate the Eighth Amendment, the condition must be "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.* (quotation marks and citation omitted).

In describing the state of mind necessary for "deliberate indifference," a prison official is deliberately indifferent if he or she "disregard[s] a risk of harm of which he [or she] is aware." *Farmer*, 511 U.S. at 837. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." *Id.*

Meyers alleges that Schroeder was deliberately indifferent by requiring him to live in certain prison conditions. Even assuming Meyers's conditions were as Meyers alleges, Meyers has no evidence that Schroeder knew of and disregarded an excessive risk to health and safety.

Plaintiff asserts that a grievance letter he sent to Schroeder was sufficient to alert her to inhumane and unsanitary conditions. The focal point of Meyers' March 5, 2007 inmate letter, however, was his detention and classification status, not living conditions. (Dkt #48 at ¶ 66.) To the extent that matters referred to in the inmate letter[3] related to conditions of confinement, Schroeder responded that these matters were more properly addressed at the unit level. *Id.* In passing, the letter pertained to living conditions. The letter read, "Why am I housed on the floor in unsanitary conditions, sleeping on dilapidated mats[?]...house[d] in miles detention under inhumane and unlawful conditions." These broad allegations, however, are insufficient to make Schroeder aware that a substantial risk of *serious* harm existed and

---

[3]This letter was addressing Meyers's detention and classification status in the MDU, where he was housed due to a disciplinary violation. The violation was dismissed due to a procedural error, but the underlying behavior warranted a change in Meyers's classification.

for her to draw that inference. "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health'" *Farmer,* 511 U.S. at 844 (*citing Helling*, 509 U.S. at 35). To establish a prison official's deliberate indifference, Meyers must show that Schroeder was aware of the conditions in his cell and that Schroeder deliberately disregarded that risk. *Foster v. Runnels,* 554 F.3d 807, 814 (9th Cir. 2009). While the letter might have indicated to Schroeder that Meyers was uncomfortable, nothing in the letter specifically identifies any conditions that would cause an Eighth Amendment concern. Although a plaintiff may infer knowledge of a risk if it is obvious and blatant, no such facts exist here. *Id.* The letter provided to Schroeder does not obviously or blatantly point out any risks, nor does plaintiff provide any other evidence that Schroeder knew or should have known of inhumane conditions that Meyers was allegedly experiencing. It merely states conclusory allegations that do not raise awareness of a constitutional violation. Therefore, Plaintiff is unable to show that Schroeder acted with deliberate indifference.

## CONCLUSION

Plaintiff has not provided facts that support his allegation that the Defendants violated his rights pursuant to the Eighth and Fourteenth Amendments. Underwood was not deliberately indifferent to his suffering from hepatitis C. Plaintiff has failed to show that he has suffered any harm from Underwood's care. Moreover, Meyers' own physician noted that treating Meyers' hepatitis C is not emergent. Additionally, Schroeder was not deliberately indifferent to Meyers's living conditions as she was not aware of the conditions.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Dkt. #47) is **GRANTED**.

DATED this 15th day of June, 2010.

_____
G. Murray Snow
United States District Judge